IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 23-10102-LTS |
| | ) | |
| EDWIN TAVAREZ, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

For nearly six years, defendant Edwin Tavarez defrauded his decades-long friend of more than $1.5 million through a phony real estate investment deal. Instead of investing the victim's funds as he represented he would, Tavarez used the money to pay off his credit card and to gamble at casinos, among other things. For his conduct, Tavarez should be sentenced 21 months' incarceration, two years of supervised release, restitution of $1,515,836, forfeiture of $1,515,836, and a $100 special assessment.

1.  **The Offense Conduct**

Between 2015 and 2020, Tavarez led the victim to believe that they were 50/50 partners in a real estate investment project in the Dorchester neighborhood of Boston. Tavarez had known the victim, who was in his 60s at the time, for decades as a customer of the victim's auto repair shop. Shortly after the victim's father died, Tavarez convinced the victim to "invest" with him in the development of the Dorchester property. Tavarez showed the victim a purported deed for the property and an architectural drawing of what the property would look like after development. He regularly provided the victim with realistic—albeit fake—updates, including updates on purported permits, negotiations with tenants, installation of utilities, work with engineering firms, and interest rates on construction loans. Tavarez used the names of real

companies and even asked the victim to drive by the property to check if National Grid or the construction company was onsite. In fact, despite that the victim contributed more than $1.5 million to the "deal," none of the money went toward the project because there was no deal; Tavarez never even spoke to the owner of the property to be developed. Instead, Tavarez put the funds toward personal purchases at restaurants, hotels, gas stations, retail shops, liquor stores, and casinos. Indeed, in just two years, Tavarez spent more than $14,000 at casinos.

As Tavarez continued to ask for more and more funds, the victim began asking Tavarez for an update on how all the money was being spent. When, in October 2019, the victim sent Tavarez photos of two pages of a ledger the victim maintained to record all the funds he had provided Tavarez for the "deal," Tavarez admitted that he thought the victim had given him *even more* than the $1,515,836 reflected in the ledger. Just a few months later, however, as the victim continued to ask about a return on his investment, Tavarez cut off communications with the victim.

**2.      Guidelines Calculation**

The parties and Probation agree on the Guidelines calculation, which is set forth in the Plea Agreement and in the Pre-Sentence Report ("PSR"), for a total offense level of 20. This calculation reflects a base offense level of 7 under Section 2B1.1(a)(1); a 16-level increase under Section 2B1.1(b)(1)(I) because the loss or gain from the offense is greater than $1.5 million but not more than $3.5 million; and a 3-level decrease under Section 3E1.1 for acceptance of responsibility.

Since the preparation of the Plea Agreement and PSR, Section 4C1.1 of the Guidelines has gone into effect. That section provides for a further 2-level reduction of Tavarez's Guidelines calculation, to 18, because Tavarez did not receive any criminal history points and

meets the other criteria of Section 4C1.1.  The resulting Guidelines sentencing range is 27 to 33 months.

**3.      Sentencing Recommendation**

As detailed below, a sentence of 21 months' incarceration is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a).

*A.  The Nature and Circumstances of the Offense*

Tavarez's criminal conduct was serious.  He defrauded his decades-long friend of more than $1.5 million.  His crime was not a momentary lapse in judgment; Tavarez engaged in the theft here over the course of nearly six years.  Nor was this a case where Tavarez acquired the victim's money with good intentions and only afterward diverted the funds for his own use.  Rather, with each request for additional funds, Tavarez came up with an additional lie: there was a holdout tenant causing a delay in demolition; National Grid was supposed to be working on the property but had not yet arrived; the MBTA and its engineering firm had to sign off on the design; etc.  But the entire time Tavarez was feeding these lies to the victim, he knew there was no development deal and that he was using the victim's money to fund his lifestyle, including meals out, retail purchases, and trips to casinos.

*B.  The History and Characteristics of the Defendant*

The PSR describes some hardships that Tavarez faced growing up in a sometimes-violent neighborhood where his family struggled financially.  Yet despite these circumstances, Tavarez graduated from the prestigious Boston Latin High School, obtained multiple professional licenses, and has worked in security, owned a restaurant, and most recently earned an above-average salary as a private contractor.  Nothing in Tavarez's background overcomes the other sentencing factors discussed herein that support a meaningful sentence of imprisonment.

C. *The Need for the Sentence Imposed To Promote Respect for the Law and to Provide Just Punishment for the Offense.*

Tavarez's motive was purely personal gain. He understood that his gain in this scheme represented a direct loss to his friend. He did not act out of coercion, duress, or desperation. Rather, he demonstrated a prolonged willingness to engage in the exploitation of his friend for the sake of personal profit. For a financial crime, these factors point toward the highest degree of culpability.

D. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct*

A meaningful term of incarceration will also send an important message to individuals seeking to take advantage of trusting friends who, because of their relationship with the perpetrator, are more likely to fall prey to such fraudsters. Particularly given the calculated nature of the crime here, criminals are more likely to weigh the benefit of enjoying the proceeds of their fraud against the risk that they will be punished and how severely. A 21-month term of incarceration sends a signal to potential criminals that fraud is not a risk worth taking.

E. *The Need to Avoid Unwarranted Sentencing Disparities Among Defendants Guilty of Similar Conduct*

The need to avoid unwarranted sentencing disparities also supports the government's requested sentence. In the past five fiscal years, there were 686 defendants whose primary guideline was Section 2B1.1 with a Final Offense Level of 18 and a Criminal History Category of I, after excluding defendants who received a departure under Section 5K1.1. Of those defendants, 88% received a sentence of imprisonment, in whole or in part, with the average and median length of imprisonment being 19 months. *See* U.S.S.C., Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard. The government's

slightly higher request reflects that Tavarez engaged in his scheme for a lengthy period against a longtime friend who was already in his 60s when Tavarez began defrauding him.

4.     **Restitution**

The victim maintained a ledger in which he noted every cash and check payment to Tavarez for the development "deal."  He texted two photographs of that ledger to Tavarez in October 2019.  Those photographs reflect payments totaling $1,515,836.  When he received those photos, Tavarez did not challenge the numbers listed.  Rather, he admitted, "Can I be honest?!  I've been jottin down last 6months and not added it up yet… so in my head- I thought it was much more!"  PSR ¶ 22 (typographical errors in original text message).  Because the bulk of these payments were in cash, the government cannot trace them.  At a minimum, bank records reflect the victim gave checks totaling $570,184.50 to Tavarez.  However, Tavarez's own admissions confirm that the total loss—and corresponding restitution to the victim—is at least $1,515,836.

## CONCLUSION

For the reasons set forth above and in the PSR, the government respectfully requests the Court impose a sentence of 21 months of imprisonment, 24 months of supervised release; restitution of $1,515,836, forfeiture of $1,515,836, and a $100 special assessment.

       Respectfully submitted,

       JOSHUA S. LEVY
       Acting United States Attorney

By: */s/ Kristen A. Kearney*
       KRISTEN A. KEARNEY
       Assistant U.S. Attorney

Date:  November 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

Date:  November 6, 2023                           */s/ Kristen A. Kearney*
                                                  KRISTEN A. KEARNEY
                                                  Assistant U.S. Attorney